AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>T-Mobile US, Inc.<br>4 Sylvan Way, Parsippany, NJ 07054<br>re: (858) 933-5862 | )<br>)<br>)<br>)<br>)<br>) | Case No.   '24 MJ1011 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ District of _____ New Jersey _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. sec. 2113(a) | Bank Robbery |

The application is based on these facts:

See attached Affidavit of FBI SA Zenaida Castro, incorporated herein by reference.

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Special Agent Zenaida Castro, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: __ March 12, 2024 __

_____
*Judge's signature*

City and state:  San Diego, California

Hon.Bernard G. Skomal, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Zenaida Castro, being duly sworn, declare and state:

## I. Affiant's Training and Experience

1.     I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2.     I have been employed as a Special Agent with the FBI since March of 2019. I am presently assigned to the Violent Crimes Task Force (VCTF). The VCTF investigates crimes that include, but are not limited to, bank robberies, commercial robbery chains, kidnappings, extortions, homicide in foreign countries and assaults on federal officers. Prior to my assignment with the VCTF, I completed the 21-week FBI Academy and was trained in investigative techniques, procedures, and strategies. I have also received specialized training in kidnappings and crisis negotiation. A number of these investigations have dealt with the use of electronic communication devices to assist in the commission of the crime.

3.     I have also participated in investigations in which members of Mexican drug trafficking organizations and other persons engaged in violent crime were engaged in extortion, kidnapping, and armed robbery and relied heavily upon telephone communication and social media to communicate with associates and coconspirators to include the use of messaging applications such as WhatsApp, email services, social media and cellular phones to communicate with associates and co-conspirators. Through my investigations, my training and experience, and discussions with other law enforcement personnel, I have become familiar with the tactics and methods used to commit violent crimes such as kidnapping, extortion, armed robbery, assault on a federal officer, and murder. My knowledge of the matters contained in this affidavit is

based upon my personal knowledge, information provided to me by other law enforcement officers/agents, and witnesses.

## II.   Purpose Of This Affidavit

1.   This affidavit supports applications by the United States of America for search warrants for T-Mobile, 4 Syvlan Way, Parsippany, New Jersey, 07504, as described in Attachment A, to search the account associated with the following cellular telephone number: (858) 933-5862 serviced by T-Mobile (**Subject Account**), for subscriber information, telephone toll data, and cell-site geo-location information from February 10, 2024 at 12:00 AM to February 13, 2024 at 11:59 PM. There is probable cause to believe these records and information constitute evidence, fruits, and instrumentalities of violation of federal criminal law of Title 18, United States Code, Section 2113(a) (Bank robbery) as described in Attachment B. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services. In this case, as will be shown below, T-Mobile provides electronic communication services in the form of cellular and wireless telephone service for the subject account. The FBI is investigating Anthony Pernelle Burgess (BURGESS) for a bank robbery that occurred on February 12, 2024.

5.   The following is based on my own investigation, and consultation with other law enforcement agents and officers.  Because this affidavit is for a limited purpose, I have not included every fact I know about this investigation.  I set forth only facts necessary to establish foundation for the requested warrants.  Dates and times are approximate.

## III.   Probable Cause

6.   On February 12, 2024, at approximately 14:41 hours, an unknown male (later identified as BURGESS) robbed the Navy Federal Credit Union1 located at 6755

Mira Mesa Blvd, San Diego, California (CA) 92121. The suspect entered the bank and approached the first victim teller and placed a note on the counter in front of the teller while making a verbal demand for money. The suspect put his hand inside the chest area of his jacket simulating he had a firearm. The note stated, "Place all large bills on the counter or I will shoot you." The suspect kept demanding the teller give him more money and asked the teller to specifically open the bottom drawer. The teller handed the suspect all her money to include a GPS tracker. The teller said she was in shock and thought to herself "Why me." She was shaking and nervous.



7.     After taking the money and placing it in a white bag, the suspect approached the second victim teller and made another verbal demand for money. The teller complied and placed money, a GPS tracker and deposited customer checks on the countertop. The suspect grabbed everything that was placed on the countertop, placed it in a white bag and walked out of the bank and went East, towards Camino Santa Fe.



1
2
3
4
5
6
7

8.     The suspect was described as a tall African American male and was between 5'11"-6'1" tall. The suspect was captured on video surveillance wearing a dark black or blue hat, black sunglasses, a blue/black cloth mask covering his nose and mouth, a dark blue/black hooded jacket with buttons, black gloves, dark pants and black shoes with white soles. The footage below was obtained from surveillance footage of the suspect departing the bank on February 12, 2024. The demand note was left behind by the suspect. The total loss for the bank was $4,995.

8
9
10
11
12
13
14
15
16
17
18
19



20
21
22
23
24

9.     At approximately 14:40 hours, surveillance video from a nearby local business captured an individual matching the description of the suspect walking to the bank before the robbery and walking back the same direction after the robbery. Before the bank robbery the suspect walked North bound on the sidewalk, on Camino Santa Fe. The suspect then walked West bound towards the bank.

25
26
27
28

1
2
3
4
5
6



7     10.    After the bank robbery, an individual matching the description of the
8  suspect left the bank and at approximately 14:42 hours the suspect was observed on
9  surveillance video from a nearby local business walking East bound back towards
10 Camino Santa Fe.

11
12
13
14
15
16
17
18
19



20     11.    At approximately 14:43 hours, the suspect is seen walking South bound
21 Camino Santa Fe on the sidewalk, towards the intersection of Camino Santa Fe and
22 Flanders Road.  No further video of the suspect is seen after this point.

23
24
25
26
27
28

1
2
3
4
5
6
7



8
9
10
11
12
13



14

15      12.     Two Global Positioning System (GPS) trackers were provided to the

16  suspect by the tellers and later recovered at two (2) different locations nearby. Tracker

17  1 was located at 10340 Camino Santa Fe, San Diego, CA 32.90427146, - 117.1718083

18  (Tracker 1 location). Tracker 2 was located at 6990 Carroll Road, San Diego, CA

19  32.885237, -117.1708693 (Tracker 2 location). Based on Tracker data and surveillance

20  video captured, the speed of Tracker 1 and Tracker 2 is consistent with the subject

21  walking away from the bank.

22      13.     At approximately 14:45 hours, Tracker 1 became stationary around 10340

23  Camino Santa Fe, San Diego Ca, a business park, while Tracker 2 was still mobile

24  traveling up to 50 mph. Based on surveillance footage captured on Flanders Rd., at

25  approximately 14:46 hours, an orange Smart Fortwo sedan was observed departing

26  tracker 1 location.

27

28



14.     At approximately 14:46 hours, Tracker 2 was mobile from Tracker 1 location. Based on the speed of Tracker 2 at 55.9 mph, investigators believe Tracker 2 went mobile in a vehicle. At approximately 14:48 hours, Tracker 2 was stationary at Tracker 2 location. Based on surveillance footage an orange Smart Fortwo is the only vehicle driving westbound on Carroll Road at the time. Investigators observed the vehicle slow down at approximately 14:48 hours near the exact location Tracker 2 was located by investigators. Tracker 2 data matched the speed and direction of travel at the same time. Agents were not able to observe the vehicle's license plates. Per the surveillance footage from the ATM machine outside of the Navy Federal Credit Union a vehicle matching the description of the vehicle was observed driving through the parking lot.

1
2
3
4
5
6
7
8
9



10   15.    Upon reviewing video surveillance video, investigators observed an

11 orange Smart Fortwo car driving southbound in front of the Navy Federal Credit Union

12 parking lot of 6700 Mira Mesa Blvd then turning eastbound towards Camino Santa Fe

13 timestamped at 13:50 hours.



14
15
16
17
18
19
20
21
22

23   16.    Based upon my experience and training and consultation with other law

24 enforcement officers experienced in bank robbery investigations, I know that it is a

25 common practice for bank robbers to stage a "get-away" vehicle in the general area

26 where the robbery is to take place in order to expedite flight after the crime.

27
28

8

17.     On February 16, 2024, an FBI Task Force Officer ran a query in law enforcement databases for an orange Smart Fortwo vehicle. There were two hits, however the pin stripes on the vehicles did not match the vehicle from the day of the robbery. On February 19, 2024, the same query was run again and there was an additional hit on February 16, 2024, for an orange Smart Fortwo with the license plate CA 6TDD792 (SUBJECT VEHICLE) with the same pin stripe as the vehicle observed near the tracker locations on the day of the bank robbery on February 12, 2024.

18.     The Smart Fortwo is a unique car. Investigators have done comprehensive searches and there are only a few other orange Smart Fortwo's in the database. Based on different model identifiers on vehicles to determine the model year, the pin stripe on the orange Smart Fortwo is unique for certain models. The investigators were able to determine that the vehicle was a second-generation smart car manufactured between the years 2007 to 2014. Based on surveillance photos provided by a law enforcement database, the rims on SUBJECT VEHICLE also match the rims identified on the vehicle from surveillance footage.

19.     A review of the California Department of Motor Vehicles (DMV) databases identified that SUBJECT VEHICLE, was registered to Anthony Pernelle Burgess (BURGESS). Further review of California DMV records revealed BURGESS' height is 6'1, weight 205 lbs., brown eye color and black hair. On February 20, 2024, a search of a publicly available databases revealed an Anthony Pernelle Burgess, associated to an address 4178 Decoro St. Apt 66, San Diego, California 92122. (SUBJECT RESIDENCE). Per a vehicle insurance claim filed by BURGESS on August 25, 2023, the SUBJECT RESIDENCE was associated to the claimant driver BURGESS. Surveillance was conducted at SUBJECT RESIDENCE and the SUBJECT VEHICLE bearing California plate 6TDD792 was parked in the apartment complex parking lot. California DMV records provided the following photo of BURGESS:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



20.    Law enforcement records documented BURGESS' previous arrest in 2011, for committing a series of nine bank robberies. BURGESS pled guilty to nine counts of Felony Bank Robbery and was sentenced to 51 months. The description of BURGESS appearance in the 2011 robberies such as height, weight and outfit is very similar to the description of the suspect from the robbery on February 12, 2024. In the 2011 robberies, BURGESS also used a demand note and asked for the bills from the bottom drawer. From my experience, the suspects who ask for the bottom drawers or know there are trackers located in the money are experienced bank robbers and have committed the crime before.

21. On February 28, 2024, pursuant to an arrest warrant issued in the Southern District of California, BURGESS was arrested in a 2008 Orange Smart Fortwo sedan. Pursuant to a Federal Search Warrant on the 2008 Orange Smart Fortwo sedan, investigators discovered a title in the vehicle that confirmed BURGESS was the registered owner.

22.    Per law enforcement databases BURGESS was the subscriber for phone number (858) 933-5862 (**Subject Account**).   Investigators determined the service provider for **Subject Account** is T-Mobile.

23.    Per an auto claim BURGESS provided that the **Subject Account** was his own. Per a credit reporting agency the subject account is associated to BURGESS. On February 28, 2024, during the arrest a phone was seized from BURGESS' vehicle. During a custodial interview, BURGESS provided **Subject Account** as his personal

phone number. BURGESS requested to obtain phone numbers from the same phone that was seized from the vehicle during the custodial interview to communicate with friends and family while in Federal Custody.

24.     Based on my experience, suspects will use their phones to take photos of the location they may rob or park the getaway vehicle. Suspects will also use their phone to make searches on either their map application or their search engine to find the location of the banks.

**JUSTIFICATION FOR DATA AND DATE RANGE SOURCE**

25.     Based on my training and experience, historical call detail records are relevant and material to the investigation of individuals who commit robberies because such information can help identify the subjects and the physical location of the subjects' cellular telephone at the time of the crime. A subject will often communicate on a cellular telephone prior to, during, and after the commission of a robbery – including checking with accomplices about possible police presence. In addition, even though the subjects may not be actively on the cellular telephone during the commission of the crime, the cellular telephone may receive a text or an incoming call that the subject was not anticipating, thereby indicating the telephone's location. Additionally, robberies generally involve individuals who enter the bank as well as individuals who are responsible for driving a "get away" car. The normal modes of communication for these types of subjects are cellular telephones. It is likely, given the information included above, that the robbers used cellular telephones to coordinate their movements.

26.     Further, also based on my training and experience, locational data through historical call detail records also demonstrate efforts to plan and coordinate a bank robbery before and after the robbery occurs. For example, co-conspirators will frequently scout a target bank or business ahead of the planned robbery. Additionally, locational data is important to identify stash houses, safe houses, and locations of residence after the robbery occurred. Finally, locational data prior to and after an event

11

can also demonstrate the identity of the individual who exercised care, custody, and control of a cellular telephone during the event. Consequently, for the reasons provided above, I respectfully believe there will likely be relevant and responsive data on the **Subject Account** for the time periods of February 10, 2024 through February 13, 2024 for the bank robbery that occurred on February 12, 2024.

## BACKGROUND REGARDING THE WIRELESS PROVIDERS

27.     Based on my training and experience, and my consultation with other law enforcement officers, I am aware that T-Mobile routinely collects and stores data for the electronic communication accounts to which it and other providers issue telephone numbers. The data includes: (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed information concerning subscribers' outgoing direct calls, text message, and SMS messages; and (iv) detailed information concerning cell-site geo-location data.

28.     In particular, I know that cell phones connect to a provider's network through cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the subject account. Records and data identifying the towers or sites to which a phone connected therefore tend to identify the phone's and phone user's location at particular times.

29.     I also know that different providers use the speed with which signals travel between cell phones and cell towers ("per call measurement data," or "PCMD"), as well as other data, to better calculate and record the location of phones accessing their networks. Different providers may use different terminology to describe PCMD. For example, AT&T has referred to the resulting location information as "NELOS" data; Verizon, as "Real Time Tool" or "RTT" data; Sprint, as PCMD; and T-Mobile, as "TDOA or timing advance information".

30. This application requests such per call measurement data (by whatever name the provider uses) for the **Subject Account** for the following date and time range (all PST):

    a. February 10, 2024 at 12:00 AM to February 13, 2024 at 11:59 PM.

    b. During these time periods, the subscriber for the **Subject Account** is believed to have been located in San Diego, California.

CONCLUSION

31. Based on the foregoing, I submit there is probable cause to believe that **Subject Account** as described in Attachment A, has been used as instrumentalities of a crime and that the evidence described in Attachment B will contain records constituting evidence of violation of 18 U.S.C. § 2113(a) (Bank Robbery).

Zenaida Castro
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me on March 12th, 2024

HONORABLE BERNARD G. SKOMAL
United States Magistrate Judge

## ATTACHMENT A

*Property to Be Searched*

T-Mobile hosts the electronic communication account, **The Subject Account**, associated with the telephone number (858) 933-5862 that is the subject of this search warrant and search warrant application ("subject account").

T-Mobile is an electronic communication service provider whose primary computer information systems and other electronic communications, and storage systems, records, and data are located at 4 Syvlan Way, Parsippany, New Jersey, 07504.

## ATTACHMENT B

*Particular Things to be Seized*

I.   Service of Warrant

The officer executing the warrant shall permit the Provider in Attachment A, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II.   Items to be Seized

Agents shall seize the following records, data, and information maintained by the Provider for the Subject Account identified in Attachment A. Provide Call Detail Records for (858) 933-5862, for the time period covering February 10, 2024 at 12:00 AM to February 13, 2024 at 11:59 PM. To include:

   a. Subscriber information, including:
      i.   Names;
     ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
    iii.   Contact numbers;
     iv.   Activation/Deactivation dates;
      v.   Account number;
     vi.   Social Security Number;
    vii.   Account features;
   viii.   Local and long distance telephone connection records;
     ix.   IP Session and IP Source-Destination reports to include records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      x.   Length of service (including start date) and types of service utilized;

15

xi.   Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

xii.   Other subscriber numbers or identities; and

xiii.   Means and source of payment (including any credit card or bank account number) and billing records.

b.   Available TDOA or timing advance information, to include 1X, EVDO, LTE, and data;

c.   Records and other information about past wire or electronic communications sent or received by the subject account, including:

i.   the date and time of the communication;

ii.   the method of the communication;

iii.   the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses; [and]

iv.   Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications; and

v.   Device identifiers, such as IMEI, for all devices (watches, HUM, tablets, etc.) that are connected/paired to this number/subscriber account.

which are evidence of violation of 18 U.S.C. § 2113(a) (Bank Robbery).